Good morning, Your Honors. May it please the Court, Cynthia Hahn for Appellant Robert Dean Ellsworth. I'd like to reserve two minutes for rebuttal time. This is essentially a case of first impression in any circuit that I can find, dealing with whether an ex-felon or felon in possession of a firearm is entitled to increase his sentence by two levels as a specific offense characteristic, based on the guns being stolen or having a serial number obliterated, whether or not the felon knows of the status of the gun, as opposed to a felon in possession of explosives, which has a mens rea requirement of whether the felon has reason to know knowledge or reason to know that the explosives were stolen. And up until very recently, actually until 1993, the guideline 2K2.1 did have the requirement that the felon have known or reason to believe a gun was stolen. And I looked and I cited it to you also, and I believe I included the amendment, that the guidelines, the Sentencing Commission gave no reason for removing that requirement from the guideline. However, 2K1.3b2, which is the explosives, felons in possession of stolen explosives, still has that requirement of knowledge or reason to know that they are stolen. I would submit that explosives are a lot more dangerous than guns. And as a matter of fact, the Sentencing Commission agrees with me, because in 2K2.1 footnote 11, it talks about destructive devices, which are basically projectiles that have as a component explosives. So you have grenades, missiles, things like this. And they concede that these are much more dangerous to the public at large than guns are and should be punished accordingly upward. I'm sorry. Go ahead. I'm sorry. They believe that they should be punished at a higher level. But could there be a rational distinction between the proliferation of guns in comparison with explosives that might be a rational distinction? If there is, Your Honor, I think the United States is more concerned about explosives these days coming into the country than they are about – Maybe these days, but – Yes. Back when they made the change. When they adopted this. If there were – Congress has a statute for stolen weapons, stolen guns. And it doesn't say any person except an ex-felon. It says any person in possession of stolen guns. And at one point in time, back before the felon in possession of a stolen firearm became such a high guideline to begin with as a base offense level, these were fairly equally treated by the guidelines, felons in possession of explosives and felons in possession of guns. The guns started to go higher and higher. They started at a level 10. Now they're a level – base offense level as high as 22. So I think what is happening here is the felons are being punished for something that I would be more afraid of a felon in possession of explosives, frankly. I guess I would too, but I'm still not – I'm not understanding why it isn't rational. Since guns are more easily transferable, they're more easily smuggled, handled, all of those things. There could be a rational basis for being tougher on the guns than on explosives. When you get caught with the explosives, maybe you can address them in that context. But given the proliferation of Saturday night specials and stolen guns and everything else, keeping them out of the hands of felons seems a reasonable approach. Certainly, Your Honor. And I can see your point with that. But then again, if you look at Richard Reed, the shoe bomber, he had C-4 explosives in his shoes. So I would not say guns are more easily transportable than C-4 explosives. What is our authority to, in effect, strike out one of the guidelines? Because we may think it deprives somebody of the mens rea element of the crime. Well, certainly, the panel here are judges. They interpret the law. The law is a guideline, isn't it? The guideline is a form of law, isn't it? It is. Even if it's advisory. But the judges can still find them unconstitutional when they are unconstitutional, as they are in this case. What is it that makes it unconstitutional? Because you have similarly situated felons, one being punished with no knowledge, the other one only being punished with knowledge. The change was made without any rational basis on the part of the Sentencing Commission. How do we know there was no rational basis? Because I provided the Court the amendment that changed it. And they just said, this is to make it clear that, here it is here, this amendment clarifies that the enhancement in 2K2.1b4 applies whether or not the defendant knew or had reason to believe the firearm was stolen or had an altered or obliterated serial number. That's all they say. They don't. That's in their reason for the amendment. But my understanding of the law is that if we can think of any conceivable reasonable basis, that that's enough. Your Honor, I don't concede there is a rational basis here because you have two similarly situated beings under the law, felons. You have two, and a matter of fact, the explosives rose under the Firearms Act. It was separated out in 1970. But up until then, they were treated the same. The guideline language is exactly the same. Anything about the 1970 revision or amendments that shed light on this, why they separated them out? They separated out and made their own thing for explosives for regulation purposes, to regulate explosives better. So you have two things that are both highly regulated, firearms and explosives. Explosives are very highly regulated. I did a case on a man who stole, a felon who stole explosives. And so I have a little more understanding of this than most because we lost that one. But here you have felons both stealing highly regulated materials, highly dangerous materials. Certainly, explosives are much more volatile than guns. Guns, you usually have to pull a trigger. Explosives can sometimes go off by themselves without any impetus by the felon. Explosives can harm a lot more people. If an explosion went off in this courtroom, there would be more people injured than somebody shooting a gun. And I want to reserve my two minutes, and I'll continue then. Thank you. May it please the Court. My name is Robert Don Gifford, and I'm an assistant U.S. attorney from the District of Nevada. Just to address the treatment of different felons, I believe the Coon case specifically talked of the fact that, in a nutshell, we don't just take a number and plug it in. The Coon case is where you basically look at people, and you look at their backgrounds, and you look at a different set of formulas because a felon is not a felon, is a felon. Therefore, we all get the same sentence. In this case, this felon, who has a similar background than this felon, then, yes, they should be the same. However, this felon over here is in possession of a stolen firearm. Now, there is this – The status is felon. Correct. They're all – there's no – I mean, that's – it doesn't distinguish the degree of felony. It just says felon. So as long as the felon is a felon, then there's sort of an equal playing field there. That's where we – Individualized assessment based on status as a felon. That would be the first step that they were taking and looking at it. The second – I think the counsel has conceded that, just comparing felon to felon. Correct. Correct. But then there's the additional fact that would concern anyone. There's a whole separate charge for people that if we can show the person knew it was stolen, that's a whole separate statute. But at the sentencing hearing, a court needs to be able to take into consideration, well, should I give this guy a little bit harsher sentence than this felon? And the guidelines did spell it out by adding that two-level enhancement. And that two-level enhancement went through a lot of scrutiny early on during the early 90s. I think that change came in 1989. And throughout the 90s, there was a lot of challenges to – it's section B4. And it survived all of that scrutiny. And I believe in one of the cases is that, therefore, stolen or obliterated firearms in the hands of people recognized as irresponsible pose great dangers. And the guidelines here reflect this heightened danger. What do you mean? Your Honor, I'm citing from our brief. This is at page 16. I thought you were quoting legislative history. Oh, no, sir. No, sir. And, Your Honor, as far as legislative history, I didn't find anything directly on point that spoke to exactly why we had to separate it out. No detailed discussion. But, however, the courts have discussed it. And I think it is more or less a common-sense approach that, at first, of course it is a status crime. Felon cannot be in possession. But that's only at the – that's at the charging level. We are at the sentencing level where there are certain aspects of a sentence that not – does not necessitate a mens rea application, such as, you know, we don't have to show – we don't have to show that if a defendant knows or he knew that his prior conviction was a crime of violence. We don't have to show the defendant knew that his prior conviction was a drug trafficking offense. Those sort of – those sort of aspects are sentencing factors, that there is no mens rea. They are, in of itself, aggravators that a court can and should consider at sentencing. And in this case, it is a – we have a stolen firearm in possession of a convicted felon. And, in fact, the government did present evidence. Not only was it presented in the pre-sentence report, but evidence was presented at the sentencing hearing through live testimony that the firearm itself was, in fact, stolen. And I guess moving on to the second aspect, the court here also did an upward departure. And the question is whether or not this upward departure was proper. Was it reasonable? In this case, this is in regards to an individual who received life in prison. He got out on parole roughly 15 years after a first-degree murder conviction. A year and a day later, he is caught with a firearm. And the reason they were looking for him, because he had absconded from parole. When they approached him, he reached for the firearm while he was in a casino, and they took him down. The judge had the option of – when they looked at it at the sentencing guidelines, he was only in criminal history category three because he's been in prison. The judge said, well, let's look at all of his other prior criminal convictions. What would they be? And he estimated that the probation department took him all the way up to level six. But he said, I'm not necessarily relying on these prior convictions. In fact, I think it's a very close call. But if anything, I'm only going to move him up to a five. And what the court said is that I'm not relying on his prior outdated convictions. I am relying on the fact that what happened here is something that sends a chill down the spine of the individuals in this community. This could have gotten very bad. We have a convicted felon, convicted murderer, out on parole within a year. He has a gun in a casino, and he goes for it. This could have been a lot worse situation. And therefore, the judge moved him from the criminal history category three to a five and even said, this is a close call. I think I should put him in a six, but I will give him the benefit of the doubt. So, therefore, that in and of itself shows that he's not relying on the... Counsel, if he's not relying on those stale priors, he has to be probably relying on the murder. And that then gets you in trouble with that county, I think. No, ma'am. No, ma'am. What we have here, Your Honor, is that under the enhancement, under the 4A, under section 4A where the enhancement happens, they said, if this prior criminal history is understated, if that prior criminal act doesn't reflect the seriousness of his present guideline calculation, then this court can depart up. Don't you have to rely on these stale priors to have his criminal history underrepresented? The... They're looking... Not in of it by itself, but the court did state that he wanted to look at it because he felt like he had to take it into consideration, but he was not solely relying upon it. And he even spelt... It was really what saved you, and you don't want to go there. Well, the... I guess what I'm trying to emphasize is that the court was very careful in his consideration. He wanted... The court spelled it out and said, I want to know what he would be if they were still valid. He would be a 6. This was a case where the judge who did the... who had tried the case was not the same judge who sentenced him, wasn't it? No, Your Honor. There was no trial in this case. Well, who handled the original... I'm sorry? Well, who handled the original plea was a different judge. No, Your Honor. It was the same judge. It was the same judge, Judge Larry Hicks. He took the plea and... I may have gotten us confused with another case where Judge Pro came in later and did the same thing. No, sir. Getting back to the stale priors that Judge Fletcher had seen, they were stale because he was in institutional custody all of those years and wasn't in a position to acquire any more recent additions to his rap sheet. But he had a pretty impressive rap sheet from the beginning, even though it was stale. Yes, sir. Yes, Your Honor. And was the judge entitled to look at that in deciding to exercise some discretion under an advisory guideline? Yes, Your Honor. And that's what he wanted to emphasize the most in when he was making his record is that he wanted to make sure that it was clear that he wasn't relying only on his prior record, but he wanted to get a full picture. In fact, he stated, I feel this is my duty and my obligation to impose a sentence, which I think comports with Title 18, United States Code, Section 3553. And had the court been relying on those outdated convictions, he would have put him at a six. And he even made that clear. And I believe at the excerpt to record at 97, I'm not necessarily saying I'm going by these point calculations, but I ask it because it gives me some broader sense concerning guideline recommendations under these circumstances. So I think maybe you strayed into this debate because you suggested, at least I heard it, Mayor Krupp, same way my colleagues did, that you were ruling out the requires other than the murder. No, no. That's in the judge's consideration. Is that what you're saying? Yes, Your Honor. I think he took everything into consideration. But what was brought up in the opening brief was that he only relied on that. And that's not what he did because if he had, it would have been a criminal history Category 6. What the judge was very clear about was he was taking this under 3553A and looking at the whole picture. And he only moved him from a three to a five rather than to a six. Because he talks about it involves everything from prior weapons to those related to and then he says I don't need to go through all of it. Yes, Your Honor. Yes, Your Honor. I see that I've run out of time. Yes. Thank you very much, Your Honor. Okay. I would just like to touch on a couple of points and then I'll move on to what I would call the bad marriage argument. There is a separate statute for ex-felons in possession of explosives, I mean for stolen explosives, but there is also a statute for possession of stolen firearms. So that's not really a good reason for differentiating the two. And also I'd like to point out that all of the government's cases have to do with due process arguments. And basically here what we have is an equal protection argument, which is quite different from the due process argument, i.e., lack of notice, et cetera, et cetera, that go to due process. This is an equal protection argument. And the government did not provide a rational basis for why one is different from the other. Moving on to the bad marriage argument, I provided in the opening brief a list of Mr. Ellsworth's priors, and they are basically misdemeanors. There are two burglaries, both overbroad under the one under 459 of the California Penal Code, which has already been found overbroad by this court, and another one under a Nevada statute, which is also overbroad. Most of these priors don't even have statutes on them in the pre-sentence report. And the judge just called his criminal history aggravated, egregious, and violent, when in fact they were almost all misdemeanors. He didn't have an aggravated, egregious prior history. Of course, he had the, I mean, that's like saying, well, what else was wrong besides that he was dead? I mean, he did have a murder. He didn't have any misdemeanor.  I don't think he was trying to understand that these were misdemeanors. Counsel below objected to his taking into consideration those priors, but he went ahead and did so anyway. And counsel said, well, if your Honor is going to consider that, then I would ask that, you know, we be given more time or whatever, because this was not what we contemplated when we were, you know, determining what his sentence was going to be as far as enhancements and then plus a two-level criminal history enhancement. And I'd just like to point out bad marriage, which even though another decision came down on it, still the man had over 100 prior convictions, and a one criminal history increase was found unreasonable. That case is still good law. Okay. Thank you very much. Thank you. All right. Thank you, counsel, for your arguments. We do appreciate it. And the case argued is submitted.
judges: Goodwin, B. Fletcher, Fisher